**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| In re | |
|---|---|
| SARAH S. KIM, | Chapter 7<br>Case No. 14-14747-FJB |
| Debtor | |

**MEMORANDUM OF DECISION**

I.  **Overview**

There are three matters before the Court: (1) A motion filed by the chapter 7 debtor, Sarah S. Kim (the "Debtor) to report contempt for creditor Lloyd Rosenthal's (the "Creditor") violation of the automatic stay and for sanctions [Docket #49], (2) the Court's Order to Show Cause why the Debtor should not be sanctioned under Fed. R. Bankr. P. 9011 for making misrepresentations to the Court for the purpose of delaying these proceedings [Docket #110], and (3) a motion by the Creditor to dismiss and for sanctions [Docket # 117].  After an evidentiary hearing, the Court now makes the following findings and rulings, and on the basis thereof, concludes that the Creditor violated the automatic stay, causing actual damages to the Debtor in the amount of $990.  However, this Court having previously ordered the Debtor to pay $990 to the Creditor and this obligation remaining unsatisfied, the Court will release both parties of all outstanding obligations to each other arising out of this Court's orders.

II. **Facts and Procedural History**

The Debtor is an attorney admitted to the Massachusetts bar.[1]  The Debtor is the former owner of a condominium unit located at 165 Cottage Street, #701, Chelsea, Massachusetts (the "Unit").

---

[1] On July 12, 2016, the Massachusetts Supreme Judicial Court entered an Order of Suspension for Definite Term suspending the Debtor from the practice of law in the Commonwealth of Massachusetts for a period of one (1) year and one (1) day.

The Debtor lost ownership of the Unit through a condominium lien foreclosure action. In March 2012, the Creditor purchased the Unit at a public auction. After purchasing the Unit, the Creditor, in an attempt to turn a quick profit, contacted the Debtor and asked if she wished to repurchase the Unit. The Debtor, who has vehemently contested the legitimacy of what she has called a "sham foreclosure," both declined to repurchase and refused to vacate the Unit. In October 2012, the Debtor was served with a notice to vacate.

In November 2012, the Creditor brought a summary process action in Chelsea District Court. The Debtor, representing herself in the summary process action, moved to dismiss the action, but that motion having been denied, answered and counterclaimed. After a trial, judgment entered in favor of the Creditor for possession and on the counterclaim. The Debtor filed an appeal from the judgment, and the Appellate Division of the District Court affirmed the judgment in September 2014. Subsequently, the Chelsea District Court issued an execution for possession of the Unit (the "Execution for Possession"). A levy on the Execution for Possession was scheduled for October 8, 2014. The Debtor filed multiple requests for stays, both to the Chelsea District Court and to the Massachusetts Supreme Judicial Court, all of which were denied.

On October 8, 2014, the Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code, commencing the present bankruptcy case. On the Debtor's suggestion of bankruptcy, the constable who had been appointed to effectuate the levy on the Execution for Possession canceled the levy.

On October 15, 2014, the Creditor, represented by Attorney Jeffrey Turk ("Attorney Turk"), filed with this Court an expedited motion requesting an order "affirm[ing] that no automatic stay exists as to the eviction of the Debtor" from the Unit on the basis that such eviction was subject to an exception from the automatic stay under 11 U.S.C. § 362(b)(22). In the alternative, the Creditor sought, through his motion, an order granting relief from the automatic stay to allow the Creditor to exercise his

2

state law rights as to the Unit, including evicting the Debtor. The motion did not include an explicit request for relief from the fourteen day stay of any order granting relief from the automatic stay imposed by Fed. R. Bankr. P. 4001(a)(3). The Court granted expedited treatment and held a hearing on the Creditor's motion on October 21, 2014.

At the October 21, 2014 hearing, the Court rejected the Creditor's argument that the automatic stay was not in effect as to the potential eviction under 11 U.S.C. § 362(b)(22). However, the Court found cause to allow the Creditor relief from the automatic stay and orally granted the Creditor relief to proceed with his state law remedies as to the Unit. Speaking to the Debtor, the Court stated:

> There is no bankruptcy purpose in my continuing the stay on a case where the foreclosure has already occurred. And where you have made the decision to litigate with them in the state court, then that's where you ought to be. All right?
>
> The motion is allowed. I'll allow relief from stay to proceed with the state court remedies and I can tell that you'll know how to make yourself known in that venue very well. Allowed.[2]

The Court made no oral finding as to the fourteen day stay of its order imposed by Fed. R. Bankr. P. 4001(a)(3). Following the hearing, the Court issued a written order which was not entered on the Court's docket until October 23, 2014, two days after the hearing. In the written order, the Court found cause for relief from the automatic stay under 11 U.S.C. § 362(d)(1) and allowed the Creditor's motion. The written order provided that, "[t]his order shall be effective immediately upon entry; the stay in Rule 4001(a)(3) shall not apply to this order."

On October 21, 2014, after the hearing on the Creditor's motion for relief from the automatic stay but prior to the entry of the Court's written order on the docket, Attorney Turk sent the Execution for Possession to a constable and asked the constable to schedule a levy. Attorney Turk took this action within the scope of his representation of the Creditor. Later that day, the constable provided the Debtor with a 48 hour notice of a pending eviction.

---

[2] October 21, 2014 Hearing Tr. [Docket #132] at 26.

On October 22, 2014, the Debtor filed motions with the Chelsea District Court to vacate or void the earlier judgment, to stay the Execution for Possession, to "recall" or "quash" the Execution for Possession, and to disqualify Attorney Turk. All of the Debtor's motions were denied by the Chelsea District Court.

Several events occurred on October 23, 2014. At 3:01 P.M., the Debtor filed an emergency motion with this Court to stay the levy on the Execution for Possession while the Debtor sought an emergency review of the summary process judgment from the Massachusetts Land Court. At 3:31 P.M., the Court denied the Debtor's request on the grounds that: (1) the request should have been addressed to either the court that issued the Execution for Possession or the court in which the appeal was pending, (2) under the Rooker-Feldman doctrine, a federal court may not sit in appellate review of a state court judgment, and (3) even if this Court could have entertained the motion, it did not address the requirements for issuance of a stay pending appeal and had not been served on the opposing party.

At 3:44 P.M., the Court's above-referenced order allowing the Creditor relief from the automatic stay entered on the docket. As noted above, this order stated that it was to be effective immediately upon entry. At 3:46 P.M., the Debtor filed a notice of appeal of this order to the Bankruptcy Appellate Panel for the First Circuit.[3] The Debtor did not file a motion for a stay pending this appeal.

Also, on October 23, 2014, at the direction of Attorney Turk, the constable attempted to levy on the Execution for Possession and changed the locks on the Unit. After gaining entry to the Unit, the constable called Attorney Turk and explained that he and the bonded movers he had retained would not go inside the Unit because it was infested with vermin. Accordingly, the levy was rescheduled to November 3, 2014. No evidence was provided by either the Debtor or the Creditor as to the time the constable attempted to levy on the Execution for Possession on October 23, 2014.

---

[3] The Bankruptcy Appellate Panel eventually dismissed the appeal as moot.

On October 29, 2014, the Debtor filed an adversary complaint against the Creditor and Attorney Turk commencing Adversary Proceeding No. 14-1212.  In her complaint, the Debtor asserted, among other allegations, that the Creditor, through his Counsel, had "intentionally violated the automatic stay by having a constable serve a 48 hour notice to evict" the Debtor "without an official entry of a court's order granting" relief from the automatic stay.

On November 3, 2014, the constable levied on the Execution for Possession.  The bonded movers retained by the Constable removed the Debtor's possessions from the Unit.  At the evidentiary hearing, the Court admitted photographs of the Unit taken prior to the removal of the Debtor's possessions.  The photographs depict the Unit to be in deplorable condition, with nearly every visible surface covered in rubbish.  At the Debtor's request, the movers moved some of the Debtor's possessions into another unit in the same building owned by the Debtor.  The movers also moved some of the Debtor's possessions into a storage unit leased by the Debtor.  The Debtor has alleged that certain possessions, including valuable jewelry, were stolen.  The Debtor did not present any evidence of the missing possessions at the evidentiary hearing.  The Debtor has also alleged that she fell and injured herself at the storage unit.  No evidence was provided as to the extent or the cause of the Debtor's injuries sustained at the storage unit.

On November 10, 2014, the Debtor filed the expedited motion to report the Creditor's contempt of Court and violation of the automatic stay and for sanctions (the "Debtor's Motion for Sanctions").   In this motion, as in the complaint in Adversary Proceeding No. 14-1212, the Debtor asserted that the Creditor had violated the automatic stay through counsel on October 21, 2014, when Attorney Turk "had a constable serve a 48 hour notice to evict" on the Debtor after the hearing on the Creditor's motion for relief from the automatic stay but prior to the entry on the docket of this Court's written order.  The Court scheduled the Debtor's Motion for Sanctions for a hearing on January 8, 2015.

On November 13, 2014, the Chapter 13 Trustee filed a motion to dismiss the Debtor's bankruptcy case for failure to file certain documents. The Court held this motion for a response from the Debtor.

On November 26, 2014, the Debtor filed an emergency motion for injunctive relief that sought to enjoin the Creditor from "throwing out [the Debtor's] belongings remaining in the Unit and to grant expeditious inspection of the Unit to check remaining belongings including lost jewelries." On November 28, 2014, the Debtor filed a motion to disqualify Attorney Turk, which motion the Court set for hearing on January 8, 2015. On December 2, 2014, the Court held a hearing on the emergency motion for injunctive relief. At the December 2, 2014 hearing, the Debtor alleged that certain items of personal property, including jewelry, were missing after the bonded movers removed the Debtor's possessions from the Unit. After the hearing, the Court issued an order denying the Debtor's emergency motion for injunctive relief and ordering the Debtor to show cause why she should not be required to pay the Creditor's attorney's fees for defending the motion under Fed. R. Bankr. P. 9011 (the "First Order to Show Cause"). The Court's First Order to Show Cause stated, in part:

> [. . .] To the extent that the Debtor alleges that the missing personal property was either lost or stolen by the movers, she has remedies available in the state court under that state eviction statutes, perhaps against the bonded movers.
>
> The Motion is denied as procedurally improper and unmeritorious. Federal Rule of Bankruptcy Procedure 7065 is applicable only in adversary proceedings, which this proceeding is not. And even if Rule 7065 were applicable, the Debtor has not demonstrated her entitlement to injunctive relief. First, I find that there is no reasonable likelihood that the Debtor would prevail in an action against [the Creditor] for mishandling her personal property. It appears that [the Creditor] has followed state law in the eviction process. Moreover, the Debtor has not challenged [the Creditor's] representations that none of her personal property remains in the Unit or otherwise in [the Creditor's] possession. Second, I find that the balance of the harms falls decidedly in favor of [the Creditor]. [The Creditor] is harmed by the Debtor's delay in permitting him to obtain possession of the Unit. Indeed, as I found in the litigation over stay relief, he has a right to complete the eviction process without further delay from this court on account of the bankruptcy. Finally, the evidence is uncontroverted that the conditions in the Unit were deplorable prior to [the Creditor's] continuing efforts to exterminate, clean, and renovate the Unit. Public health and safety are appropriate considerations for this Court when

6

faced with a request for equitable relief such as an injunction. Other residents of the condominium should not be exposed to unsafe conditions.

Debtor argues that [the Creditor] violated the automatic stay by moving forward with his eviction action before I granted relief from the stay. That argument is not germane to the requested injunctive relief. Nothing in this order addresses those allegations and the Court will address them in connection with [the Debtor's Motion for Sanctions], which is currently scheduled for hearing on January 8, 2015.

Finally, [the Creditor] requests that the Court award sanctions in his favor in connection with this motion, presumably under FRCP 11, as made applicable under Bankr. R. 9011. Debtor is ordered to file a response to [the Creditor's] Rule 11 demand on or before December 26, 2014, as to why she should not be sanctioned in the amount of [the Creditor's] costs and legal fees associated with his defense of this motion. [. . .] A show cause hearing will be conducted on January 8, 2015 at 11:30 a.m.

Following the December 2, 2014 hearing, the Debtor filed a "Verified Complaint for Criminal Contempt Pursuant to Rule 42 of Fed. R. Crim. P." against the Creditor and Attorney Turk, commencing Adversary Proceeding No. 14-1233. By this complaint, the Debtor requested that the Court order that the Creditor and Attorney Turk "be required to appear before the Court to show cause why [they] should not be adjudged in criminal contempt" for "intentionally making misrepresentations to the Court." Following the filing of this second complaint, the Court scheduled status conferences in both adversary proceedings for January 8, 2015.

On December 11, 2014, after receiving no response from the Debtor to the Chapter 13 Trustee's motion to dismiss, the Court allowed the unopposed motion and dismissed the Debtor's bankruptcy case.

Notwithstanding the dismissal, the Court held a hearing on January 8, 2015 in order to resolve the parties' outstanding motions and requests for relief that were not rendered moot by the dismissal. These matters were the Debtor's Motion for Sanctions, the Debtor's motion to disqualify Attorney Turk, the Court's First Order to Show Cause, and the status conferences in the two adversary proceedings. At the January 8, 2015 hearing, the Court began by hearing argument on the First Order to Show Cause. After the parties argued the First Order to Show Cause but before the Court issued any rulings, the

7

Debtor requested that the Court continue the hearing because she did not feel well and because she had obtained counsel who was unavailable to attend the hearing. This request prompted the Court to engage the Debtor in the following colloquy:

> THE COURT: Did you say that you're hiring a lawyer?
>
> DEBTOR: Yes. And then afterwards, yes --
>
> THE COURT: You're telling me all about him.
>
> DEBTOR: Yes.
>
> THE COURT: Okay.
>
> DEBTOR: I have an attorney but about today even I thought they --
>
> THE COURT: Hold on, hold on.
>
> DEBTOR: -- would -- I couldn't –
>
> THE COURT: When I put my hand up stop.
>
> DEBTOR: Yes, Your Honor.
>
> THE COURT: Okay. So you've hired a lawyer, right? That's what you -- yes or no. Yes or no?
>
> DEBTOR: Had agreement.
>
> THE COURT: You have an agreement?
>
> DEBTOR: Yes, agreement.
>
> [. . .]
>
> THE COURT: Now, wait. I don't care who he is, so you don't have to tell me any more about his background. I don't need to hear that. But I do need to hear that you're telling me you have a lawyer.
>
> DEBTOR: Yes.
>
> [. . .]
>
> THE COURT: Now, you want to continue all of the things I have before me today?
>
> DEBTOR: Yes, Your Honor. And then I think that I --

8

| | |
|---|---|
| THE COURT: | Hold on. Yes, you do. And you -- you'll come next time with a lawyer? |
| DEBTOR: | Yes, Your Honor. Absolutely. |
| THE COURT: | You promise me that? |
| DEBTOR: | Oh, yes, Your Honor. Yes.[4] |

Following this colloquy, the Court stated that it would continue all the matters except for the First Order to Show Cause. Based on the parties' arguments with respect to the First Order to Show Cause, the Court ordered the Debtor to pay the legal fees the Creditor had incurred in defending the above-referenced emergency motion for injunctive relief, which the Court determined to be frivolous. The Court ordered the Debtor to pay $990 to Attorney Turk by February 23, 2015. After the Court ruled on the First Order to Show Cause, Attorney Turk rose to inform the Court that he believed the Debtor was not being truthful about hiring an attorney, which led to the following exchange:

| | |
|---|---|
| MR. TURK: | Your Honor, I would just for the record state that in the past we've heard many times from defense she's going to have a lawyer and the courts -- and the District Court has continued her matters for her to come back with a lawyer and she does not appear with a lawyer, so – |
| THE COURT: | You told me the truth, you've hired a lawyer? |
| DEBTOR: | Yes, Your Honor. Yes. And they – |
| THE COURT: | There will be severe consequences to you if you do not appear with counsel after promising. |
| DEBTOR: | Yes, Your Honor. |
| THE COURT: | You know, if you get a continuance today, if you tell me that you're going to appear with counsel next time, you'd better not appear without counsel. |
| DEBTOR: | Yes, Your Honor.[5] |

---

[4] January 8, 2015 Hearing Tr. [Docket #19 in Adversary Proceeding No. 14-1233] at 19-21.
[5] *Id.* at 25.

9

Relying on the Debtor's representation that she had hired an attorney, the Court continued the remaining matters to January 20, 2015. At the continued hearing, the Debtor appeared without counsel and reported to the Court that she had not retained counsel. Following the January 20, 2015, the Court denied the Debtor's motion to disqualify Attorney Turk and dismissed both adversary proceedings. Additionally, the Court issued the following order to show cause (the "Second Order to Show Cause"):

> Continued status conference held on January 20, 2015. On January 8, 2015, the Debtor appeared at a hearing on this motion and reported that she felt unwell and that she had retained a lawyer. Based on those representations, the Debtor requested that I continue the hearing. In an extended colloquy with the Court, the Debtor repeatedly stated that she had retained a lawyer, but that the lawyer could not make it to the hearing on January 8, 2015. Based on the representations of the Debtor, the Court continued the hearing to January 20, 2015. On January 20, 2015, however, the Debtor again appeared without counsel and reported to the Court that she had not retained counsel. Based on the foregoing, the Debtor shall appear at an evidentiary hearing on February 24, 2015 at 11:30 a.m. and show cause through arguments and evidence why she should not be sanctioned under Bankruptcy Rule of Procedure 9011 for making misrepresentations to the Court for the purpose of delaying these proceedings.

The Court scheduled an evidentiary hearing for February 24, 2015 on the Debtor's Motion for Sanctions and on the Court's Second Order to Show Cause.

The day before the February 24, 2015 evidentiary hearing, the parties engaged in settlement discussions which were ultimately unsuccessful. The Debtor did not pay to Attorney Turk the $990 the Court had ordered her to pay by February 23, 2015.

On the morning of the February 24, 2015 evidentiary hearing, prior to the hearing, the Debtor filed a motion to continue the evidentiary hearing and a motion to vacate the order allowing the Chapter 13 Trustee's motion to dismiss the bankruptcy case. Also, on February 24, 2015, prior to the start of the hearing, the Creditor filed an emergency motion to dismiss and for sanctions (the "Creditor's Motion for Sanctions") in which the Creditor asked the Court to dismiss all pending actions and to compel the Debtor to pay an additional $660 in attorney's fees for her failure to pay the $990 to Attorney Turk as previously ordered by the Court. The Court heard all three of these motions at the start of the hearing. The Court denied the Debtor's motion to continue. The Court also denied the

Debtor's motion to vacate the order dismissing the case on the basis that the Debtor had not demonstrated cause for reconsidering its order under Fed. R. Civ. P. 60(b), as made applicable by Fed. R. Bankr. P. 9024. As to the Creditor's Motion for Sanctions, the Debtor explained that although she had the ability to pay Attorney Turk the $990 as ordered, she did not make the payment because the parties had been engaged in settlement negotiations on the day the payment was due. The Court did not rule on the Creditor's Motion for Sanctions. The Court then held the evidentiary hearing on the Second Order to Show Cause and on the Debtor's Motion for Sanctions. As to the Second Order to Show Cause, the Debtor testified that she had hired an attorney to represent her in a state court action prior to the January 8, 2015 hearing, but she had never retained him to represent her in the bankruptcy case. As to the Debtor's Motion for Sanctions, the parties presented evidence and testimony regarding the alleged violation of the automatic stay that form the basis of the findings of fact set forth above. After the hearing, the parties submitted briefs, and the Court took the three outstanding motions under advisement.

### III. Discussion

#### A. The Debtor's Motion for Sanctions [Docket #49]

The automatic stay is a collection of stays set forth in 11 U.S.C. § 362(a) that prohibit a variety of acts against the debtor, property of the debtor, and property of the estate. Section 362(k)(1) of the Bankruptcy Code provides redress for violation of the automatic stay. It states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). A debtor alleging a violation of the automatic stay has the burden to demonstrate, by a preponderance of the evidence, that a violation of the automatic stay has occurred, that the violation was willfully committed by the respondent, and that the debtor suffered damage as a result of the violation. *In re Panek*, 402 B.R. 71, 76 (Bankr. D. Mass. 2009) (internal citations omitted).

This Court had previously determined that the automatic stay was in effect as to the potential eviction of the Debtor from the Unit prior to its granting relief.[6] The Creditor did not appeal that ruling, nor does he contest that ruling now. Instead, the Creditor argues that this Court's oral ruling at the October 21, 2014 hearing allowing the Creditor's motion for relief from the automatic stay was immediately effective. The Debtor contends that the order was not effective until it entered on the Court's docket on October 23, 2014 and that the Creditor's October 21, 2014 act of instructing the constable through counsel to serve a 48 hour notice of eviction on the Debtor constitutes a willful violation of the automatic stay.

The Creditor contends that the sole issue raised by the Debtor's motion is whether the granting of the motion for relief from the automatic stay was effective at the time it was orally allowed, or whether it was effective at the time of "ministerial act of docketing" the order.[7] However, the Court need not reach this issue. Federal Rule of Bankruptcy Procedure 4001(a)(3) provides that, "[a]n order granting a motion for relief from the automatic stay [. . .] is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Even assuming that the Creditor is correct that an oral order is effective prior to its entry on the docket, an order granting relief from the

---

[6] As Judge Hoffman recently explained, even while a "foreclosure and sale to a third party removes real property from the bankruptcy estate so that the automatic stay would not apply to actions with respect to such property, an attempt to deprive the debtor of her possessory interest in the property (even an allegedly wrongful one) remains subject to the stay. 'That is because a debtor's bare possessory interest in realty is property of the estate that is protected by the automatic stay even if the realty itself is not property of the estate.'" *In re Sullivan*, No. 16-12213-MSH, 2016 WL 3640351, at *1 (Bankr. D. Mass. June 21, 2016) (quoting *In re Fitzgerald*, 237 B.R. 252, 258 (Bankr. D. Conn. 1999); *Cuffee v. Atl. Bus. & Cmty. Dev. Corp.* (*In re Atl. Bus. & Cmty. Corp.*), 901 F.2d 325, 328 (3rd Cir. 1990)). In any event, the Debtor retained an interest in the personalty that would be affected by the notice and the eviction. *See* 11 U.S.C. § 362(a)(2), (a)(3), and (a)(6).

[7] The Debtor argues that an order is not effective until it is entered on the docket. *See* Fed. R. Bankr. P. 9021 ("A judgment or order is effective when entered under Rule 5003."); Fed. R. Bankr. P. 5003 (a) and (c) (providing that the clerk shall maintain a written docket and that orders shall be entered on the docket; 9 COLLIER ON BANKRUPTCY, para. 5003.02 (Resnick & Sommer eds.)(16th ed.) ("When an activity is physically noted on the docket, it is 'entered,' and the order thereby becomes effective."). The Creditor provides case law to contest this assertion. *See, e.g.*, *Noli v. Commissioner of Internal Revenue*, 860 F.2d 1521 (9th Cir. 1988) (affirming that order granting relief from the automatic stay was effective at the time of the oral order, rather than when the order was docketed). As explained above, the Court need not reach this issue.

automatic stay is nevertheless stayed for fourteen days under Fed. R. Bankr. P. 4001(a)(3) unless or until the Court orders otherwise.  The Court has reviewed the transcript of the October 21, 2014 hearing, and, as set forth in the findings of fact above, the Court made no oral finding as to the fourteen day stay imposed by Fed. R. Bankr. P. 4001(a)(3).  Therefore, this Court's oral order granting relief from the stay was itself stayed until entry of the written order on October 23, 2014 which explicitly provided that "[t]his order shall be effective immediately upon entry; the stay in Rule 4001(a)(3) shall not apply to this order."  Accordingly, the Creditor's act of instructing the constable through counsel to serve the 48 hour eviction notice on the Debtor and the constable's subsequent service of the notice constitute a violation of the automatic stay.

Additionally, the Creditor's violation of the automatic stay was willful.  "A violation is willful if a creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case." *Laboy v. Doral Mortg. Corp.* (*In re Laboy),* 647 F.3d 367, 374 (1st Cir. 2011) (quoting *In re McMullen*, 386 F.3d 320, 330 (1st Cir. 2004) (internal quotations omitted)). "A willful violation does not require a specific intent to violate the automatic stay[,]" rather, the creditor need only intend the act that violates the stay. *Fleet Mortg. Grp. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999).  There is no question that the Creditor was aware of the automatic stay as evidenced by his petitioning this Court for relief from it.  Attorney Turk intentionally contacted the constable, and he did so within the scope of his representation of the Creditor.  Accordingly, the act was willful.  This does not end the inquiry however.  The Debtor still has the burden of demonstrating damages.  "[A]ctual damages should be awarded only if there is concrete evidence supporting the award of a definite amount." *In re Silk*, 549 B.R. 297, 301 (Bankr. D. Mass. 2016) (quoting *Heghmann v. Hafiani* (*In re Heghmann*), 316 B.R. 395, 405 (1st Cir. BAP 2004).  Actual damages includes claims for emotional distress and attorney's fees.  *In re Panek*, 402 B.R. at 76 (internal citations omitted).

The Debtor contends that she suffered actual damages as a result of the Creditor's stay violation. She argues that she suffered emotional distress upon receipt of the notice of eviction, that she lost personal property during the eviction itself, and that she suffered physical injuries at the storage unit on the day of the eviction. The allegations of stolen property and physical injury relate to events that took place on November 3, 2014, which was more than a week after the order granting relief from the automatic stay became effective. These alleged injuries are not proximately related to the Creditor's stay violation. Further, the Debtor was unable to produce any evidence of either the stolen property or the physical injury. However, the Debtor testified credibly that she suffered emotional distress upon receiving the eviction notice and that she believed that the Creditor was acting without the sanction of this Court when she received the notice prior to the entry of the Court's written order. In a rush to evict the Debtor, Creditor's counsel walked out of the October 21, 2014 hearing and notified the constable to begin the eviction process without having obtained relief from the fourteen day stay imposed by Fed. R. Bankr. P. 4001(a)(3). Had the Creditor simply waited for the entry of the written order that explicitly granted this relief, the Debtor would have had the undeniable assurance that the Creditor was acting with permission from this Court, and the Creditor could have avoided the needless litigation that arose out of his violation of the automatic stay. The Court finds that the Debtor suffered actual damages in the amount of $990.

**B. The Creditor's Motion for Sanctions [Docket #117] and the Court's Second Order to Show Cause [Docket #110]**

With respect to the Creditor's Motion for Sanctions, it is undisputed that the Debtor never paid the $990 in attorney's fees to the Creditor as ordered by the Court. The Debtor explained that she was in settlement negotiations with the Creditor on the day the payment was due, and while she had the money available, she did not pay because she believed the parties were attempting to settle the matter. With respect to the Court's Second Order to Show Cause, the Court is convinced that, at the January 8, 2015 hearing, the Debtor misrepresented the fact that she had hired a lawyer to represent her in the

bankruptcy case when she had not.  The Court is further convinced that the Debtor made this false representation to the Court for the purpose of obtaining a continuance and delaying this proceeding.

The Court is highly concerned about the Debtor's failure to comply with this Court's order regarding the payment of the Creditor's attorney's fees, about the Debtor's misrepresentation for the purpose of delay, and about the Debtor's frequent and liberal use of legal process for frivolous ends. The Court would be loath to tolerate this behavior from a member of the general public, let alone from a member of the bar.  Were the Court dealing with an individual that it believed to be capable of a rational response to further action, the Court would be inclined to enter further orders in an effort to protect the integrity of this Court's process and orders.  However, having observed the Debtor in person several times, having read and analyzed her numerous pleadings, and having observed the photographs of her living conditions, the Court is sensitive to the possibility that the Debtor's behavior may be less the result of a conscious effort to abuse legal process than it is the product of a disordered and desperate attempt to thwart what she mistakenly but honestly believes was a wrongful foreclosure.  The Court sees little benefit to any party in attempting to either sanction the Debtor for misrepresentations or compel compliance with its prior order.  The underlying bankruptcy case and the two adversary proceedings have all been dismissed.  The Debtor has been evicted from the Unit.  The outstanding $990 the Debtor owes to the Creditor for attorney's fees is equal in amount to the actual damages suffered by the Debtor as a result of the Creditor's stay violation.  The Debtor has already been suspended from the practice of law by the Massachusetts Supreme Judicial Court.  As the Debtor has proven herself to be incapable of maintaining the basic obligations of a litigant in this Court, much less of living up to the obligations of a member of the Massachusetts bar, imposition of further obligations by this Court would almost certainly prove futile.  It is best that these parties go their separate ways.  For these reasons, the Court will release its Second Order to Show Cause and will deny the Creditor's Motion for Sanctions.

IV.     Conclusion

For the reasons set forth above, the Court will enter further orders (1) granting in part the Debtor's Motion for Sanctions [Docket # 49], finding that the Creditor willfully violated the automatic stay causing actual damages to the Debtor of $990, but releasing the Creditor from the obligation to pay these damages in light of the Debtor's failure to pay $990 in attorney's fees to the Creditor as previously ordered by the Court, (2) releasing the Debtor from the obligation to pay the $990 in attorney's fees in light of the Creditor's stay violation, (3) releasing the Court's Second Order to Show Cause [Docket #110], and (4) denying the Creditor's Motion for Sanctions [Docket #117].  Accordingly, both parties are released from their obligations to pay any amounts to each other on the basis of this Court's orders.  This case has been dismissed, and all outstanding matters within the case are now resolved.

Date:  August 11, 2016                                  _____
                                                        Frank J. Bailey
                                                        United States Bankruptcy Judge